20-5054, Cato Institute of Balance v. Securities and Exchange Commission, et al. Mr. McNamara for the balance, Mr. Berger for the appellee. Good morning, Mr. McNamara. We'll hear from you. Thank you, Your Honor, and may it please the Court, Robert McNamara for the Cato Institute. The judgment below should be reversed because the Cato Institute has standing. Cato has been injured. It wants to host events and publish books and articles featuring firsthand accounts from people who have previously been defendants in SEC enforcement actions. And it has identified people who would be willing to speak at these events and have their stories featured in these publications, but for the fact that all of them have entered into gag provisions that the SEC demanded as a condition of settling the initial enforcement action. That's an injury, and it's an injury that's traceable to the SEC because the amended complaint makes clear that the only reason that these people are unwilling to participate in Cato's speech is that they fear the SEC. Why is it just traceable to the SEC? Isn't it also traceable to each one of these individuals who entered into this contract or consent decree? It's traceable to the individuals, Your Honor, but on the amended complaint, there is no question that if these individuals were not subject to these orders, if they could speak without fear of punishment, they would speak. And I think the closest, the best case to look at for that is this court's decision in the Woodhull Freedom Foundation case earlier this year, which made clear that the only thing that's necessary for traceability and redressability is a substantial likelihood that the plaintiff will be able to do the thing they want to do. In Woodhull, the plaintiff was a licensed masseuse whose complaint was that Craigslist had stopped posting his ads after the passage of a federal statute regulating the Internet. And Craigslist was not a party. The only thing he had were some press statements, I believe, that Craigslist had made suggesting that if they could, they would go back to hosting ads like this. And that was enough. Here, the amended complaint alleges more. The plaintiff in Woodhull couldn't get his ad posted, right? Yes, Your Honor. But here, we have the restraint in front of us, and it's crystal clear that it binds the settling defendant, but it doesn't bind Cato. So what's to prevent, and Cato has this information, what's to prevent Cato from simply publishing it? Two responses, Your Honor. First, as I understand it, Cato doesn't have the legal right to publish this without the permission of the speakers themselves. They have a conditional contract, as they understand it, to publish the book. But beyond the book, Cato wants to have events featuring these people actually talking, answering questions from a Cato expert. The amended complaint says that Cato has found that the most effective way to do this kind of advocacy is actually to put former defendants in front of the audience, have them talk, have them answer questions. And they are unwilling to do that solely because they fear they will be punished by the SEC if they participate in a panel discussion like that. And so Cato is unable to engage in the most effective speech that it has found in its consistent advocacy in this area, and that's an injury. And it's an injury that can be redressed if Cato can obtain a declaratory judgment that says the First Amendment does not allow the SEC to punish people for speaking at Cato's events. Not only does Woodhull stand for the proposition that an unregulated party can raise an objection like this, provided they're actually injured, Woodhull is part of a long line of this court's precedents holding exactly that, whether it's Teton Historic Aviation Foundation or Abigail Alliance for Better Access to Developmental Drugs, where there, the only evidence that the third party would actually give the plaintiffs what they wanted if they prevailed was what this court called the naked capitalistic interest of the Constitution. Excuse me. If you prevailed, and I know this is, I'm talking a little bit about the merits, and one of the problems I have here is separating the merits from the question of jurisdiction and standing. But if you prevailed, the redressability problem would amount to what? Nullification of the bar against criticizing or claiming that the SEC didn't have evidence? Is that what? Not necessarily nullification, Your Honor. I think the only thing Cato would need for the narrowest redress of its injuries is a declaration, and obviously we'd have to put forth evidence to support the final judgment, but a declaration that says these people say these things at Cato's events. They cannot be punished by the government. Okay, well, that's what I suspected. But there are a lot of SEC consent decrees and a lot of defendants who have absolutely no connection to Cato's. Suppose they just wanted to go to a family gathering and tell people, would that, you know, whatever redressability problem you are talking about, would that mean that they could not be held to the consent decree either? Not necessarily, Your Honor. And I think this question really goes to whether we'd be able to obtain facial relief or as applied relief. And I'm certainly prepared to argue for our right to obtain the broadest possible facial relief. But I think for standing purposes, it's enough to say that Cato could obtain the narrow declaration that would actually redress its injury and allow it to have, as for example, a panel discussion featuring these particular people. So are you claiming that Cato has a First Amendment right here? Yeah, go ahead. Simon & Schuster was not a standing case. I mean, the Supreme Court was not purporting to make any sort of a holding on standing. And we know from Steel Co. that we're not supposed to rely upon drive-by jurisdictional rulings or holdings. So, I mean, isn't this really more akin to a third-party standing case here where you're saying, you know, we have a right to hear information from another speaker and that speaker is impeded from speaking to us and participating in our forums and allowing us to publish their books? Isn't this really more akin to that line of cases where you are really, in effect, standing in the shoes of a third party asserting their rights? I don't think so, Your Honor. And we don't rely on Simon & Schuster for the jurisdictional point so much as for the point that as a publisher, Cato is just as much a First Amendment speaker as the author is. I think that answers that part of the question. But Cato doesn't just want to receive information. It's not just raising the rights of third parties. The amended complaint specifically alleges in paragraph 45 that Cato has found that the most effective way to convey its own message is to be able to present these sort of testimonials from defendants, from people who participated in the criminal justice system. And it wants to engage in that speech, not just to hear it for itself, but to broadcast it, to host events, to speak in its own right, telling these stories. Well, one of the cases that you cite in support is the Pitt News cases from the Third Circuit. And what the Pitt News does and what we have done in cases like American Library Association v. Odom, which is not a case that either party cited, but those cases say you have to also look at prudential standing because you're having someone, in effect, standing in the shoes of the real party in interest, so to speak. And so you have to look at things like whether that other person is really hindered in bringing their own suit. And I don't see any allegations in your complaint that say that. And also, you have to ensure that there's a complete alignment of interests of the plaintiff with this other absent party. And that also concerns me because you say in your reply brief that you can prevail even if the settlement agreements get blown up, so to speak, and invalidated. You'll still get relief. But if that happens, if that were to be the result of this lawsuit, these third parties will be worse off than they are now, and so your interests aren't aligned. So why shouldn't I be concerned that granting standing for you is not consistent with the Pitt News line of precedent or the third party standing precedent in the Supreme Court in our court? So two responses, Your Honor. One, I think the question of whether a ruling in our favor would blow up all of these settlement agreements across the board, again, goes to the question of whether we could receive a facial or an as-applied remedy when we get to the merits. I continue to disagree that under the Kuntz case, the result of any First Amendment ruling would be to blow up these agreements as opposed to just restraining the SEC from enforcing its unconstitutional condition. But I also disagree, Your Honor, that the Pitt News cases are solely third party standing cases. In Pitt News, the Third Circuit said the newspapers didn't have third party standing, that the alcohol retailers could perfectly well have litigated under their own rights. But because the newspaper was a publisher that wanted to publish these advertisements, it had standing in its own right, and I think Cato's in exactly the same position. In Pitt News, there was no evidence in the record that I saw in the opinion that the regulation had even been enforced against these retailers. The retailers, out of an abundance of caution, were complying with the regulation. As a result of complying with the regulation, the newspapers could no longer run their ads. But I guess to me, the bigger point with Pitt News is that the court did feel that it was duty bound to undertake the prudential standing analysis. And if we also believe that we are duty bound to undertake that analysis, and what we said in Odom was that if the plaintiff may have a conflict of interest with the absent party, we held, and that was the basis for the holding, that there was no standing. Well, again, two responses, Your Honor. One, I'm not sure the extent to which prudential standing continues to be operative after the Supreme Court's Lexmark decision. But again, I don't think there is a conflict. Also, it's Patchak decision, too. Yes, Your Honor. But setting aside prudential standing, which I don't understand the SEC to have raised, I don't know that there is a conflict, at least as to the people who have specifically told the Cato Institute that they want to speak at its events. And again, I just think this goes to the question of whether we'd be entitled to a facial remedy as to all of these agreements, or an as-applied remedy as to Cato's events and the people who want to speak at Cato's events. Why does that solve Judge Wilkins' problem? Even if there's a narrow targeted as-applied remedy, Cato is helped only if there is some speaker who comes to Cato's events and publicizes the alleged SEC overreach. And when that happens, as to that defendant, the SEC would seem to be well within its rights to go back to the court and say, this defendant has breached our agreement and we now want to proceed with enforcement. Well, I think that's where the declaratory judgment would come into play, Your Honor. I don't understand the SEC's position to be that if we obtain a declaratory judgment in this case, they will nonetheless punish people for speaking at Cato's events. I understand their position to be that if they're unable to enforce these, they will assert a broader right to reopen for whatever reason, any settlement agreement that they want to, not that they can say, this person has said bad things about our prosecution. And therefore, despite the declaratory judgment says it would violate the First Amendment for punishing them for speaking at Cato's event, they can still be punished for speaking at Cato's event. What seems to me lost in this whole discussion, including in the briefs, is the fact that we're not dealing with simply an agreement between the SEC and a private individual. A consent decree is a judgment that a court enters. And there's a rule that says when a court enters a judgment and you violate it, you're in contempt of court. And it seems to me that that a looming question here is, how can one court order another court's decree to not be followed? Wouldn't you have to go back to the judge or the district court that issued the consent decree and get them to modify it? Isn't that the only way that that can be changed? No, Your Honor. And I just want to be clear at the outset that this is actually a factual dispute between the parties that hasn't been resolved. The SEC contends, and I see I'm over my time. The SEC contends that all of these gag provisions have been incorporated into consent judgments. They've been incorporated by reference. That is not correct. And we collect a number of examples in our opening brief at footnote two. So there are at minimum a large number of these that are not actually part of a consent decree. They're just an agreement the SEC has entered into that has not been incorporated into the final judgment of any court. But there is one that's attached from the District of New Jersey in which, it's at J59, in which it is incorporated into the judgment. And so, or at least there's, I guess it's, there's a consent, there's a consent, I guess it's a consent document, I'm not sure exactly how to characterize it, that's filed. But I think to Judge Randolph's point, isn't there at least a possibility that our declaration is going to conflict with an order that has been entered by another court that's not even in our circuit? I don't think so, Your Honor. And that's because final relief in this action would have to be entered based upon a record. And I don't think even the judgments that incorporate the consent order amount to a continuing judgment of another court. But even if I'm wrong about that, we've established that there are a number of these that are not incorporated in any kind of consent decree actually entered by an Article III judge. And our relief could simply be limited to saying that to the extent that matters, the relief is limited to these people that the plaintiff has identified whose gag provision is not incorporated. Well, if it's not incorporated, then what's the consequence of the individual not following it? It's just a breach of contract? And the SEC is entitled to what, damages? I believe the SEC would take the position that even if they have not been formally incorporated, that they're still going to retain their full panoply of rights to defend them. The SEC could certainly say that that's not the case and they don't have the right to enforce them. But I don't understand the SEC to have ever taken a position that they have fewer rights to punish people for their speech, depending on whether it's been formally incorporated into a judgment. There's no judgment? First Amendment doesn't make no law restricting freedom of speech. What? Is it contract? Can a contract be a law restricting freedom of speech for First Amendment purposes? The party has a right to speak and contracts it away. That doesn't seem like a First Amendment violation. Again, Your Honor, I think we're racing ahead to the merits, but I do think it can be if the executive is using the full panoply of its powers to coerce people into surrendering their First Amendment rights. And the case to look at here is really the Fourth Circuit's decision from last year in the Overby case, which is on all fours with this case. It was a challenge to a very similar city of Baltimore policy of demanding gag orders as a condition of settlement. And really, the only difference is here we have substantial allegations that specific people would speak at our events and be quoted in our publications. In Overby, the Fourth Circuit found standing based on a single allegation that was one sentence long about the difficulty of the policy impeded the newspaper's ability to carry out the important role the press plays. We have more here than Overby did. Overby recognized that demanding settlements like this, that demanding gag orders like this can violate the First Amendment, and that third party newspapers have standing to seek forward-looking relief to challenge them. But in Overby, you also had the person who had signed the settlement agreement as a co-plaintiff, and the court clearly had jurisdiction over the Baltimore Police Department as the District of Maryland and the Fourth Circuit. So you didn't have a problem where the speaker who was directly regulated wasn't before the court, there wasn't a potential for conflict of interest, and there wasn't a potential for getting crosswise with another court's order. Respectfully, Your Honor, I disagree. There was a person in that case who was subject to one of these orders, but in considering the Baltimore Brews standing for forward-looking declaratory relief, as to other people, the Fourth Circuit had to specifically find a head standing to seek that forward-looking relief, and it was very specific that that forward-looking relief was based on this one-sentence allegation, and it was the right to challenge these orders more broadly than just the one plaintiff who was before them. All right, any other questions from the panel? No. No. All right, thank you, Mr. McNamara. We'll give you some time on rebuttal. We'll hear from Mr. Berger. Good morning, and may it please the Court, Jeff Berger for the Securities and Exchange Commission. The District Court correctly ruled that the Cato Institute lacks Article III standing to launch a broad programmatic challenge to the Commission's use of contractual no-deny provisions in consent judgments. And to be clear, Cato Institute, the plaintiff, has not entered into a consent judgment with the Commission that binds it or creates any legal consequences for its speech. There is no legal obstacle to Cato publishing a book or hosting seminars or hosting conferences. Rather, to Judge Wilkins' point, this is a third-party standing case because Cato premises standing on a derivative injury, namely that unnamed defendants who previously entered into consent judgments and who are not before the Court are declining to speak. This theory of standing fails because it is based on the subjective chill of non-parties who have not even been identified. So Cato's challenge to the way the Commission settles cases, there's no legally cognizable injury that's concrete, particularized, inactual, or imminent. And under this Court's and the Supreme Court's precedent in cases like United Presbyterian, in Laird, and American Library Association, and I'm referring to American Library Association v. Barr, not the case Judge Wilkins was referring to, Cato is stating, and I have emphasis on what it states in its reply, it says that Cato's injury is that people are refusing to speak because the Commission could move to vacate the consent judgments, emphasis on could move, if there's a public denial of allegations. There is no other consequence that could result from a breach under these contracts. Are you saying there's no reasonable likelihood that if settling defendants start broadcasting their stories to the world that the Commission won't exercise its right to continue with enforcement against them? I think it depends on a large number of facts and circumstances, and we, both us and the SEC and this Court, have been deprived of any information regarding those facts and circumstances. Let me walk through some of them. One is, what is the nature of the case? Two is a very practical matter, and something that really is something that could drive the train, is how old is the case? What court entered the case? What were the remedies in the case? We don't know for certain. There's no doubt. But usually, we assume governments will enforce laws or, in this case, consent decrees, right? It's the unusual case, the Poe versus Ullman kind of case, where there's a law on the books, but the possibility of enforcement is shown to be very remote, and that has consequences for standing or ripeness purposes. There's no reason to think that the SEC is insisting on these provisions in its settlement contracts just with indifference to whether defendants broadcast. It's not with indifference, but it is with a recognition of reality that depends on circumstances. For instance, a case where someone, a defendant, publicly denies the allegation six weeks after the settlement is entered is going to be a different calculus for the Commission about relitigating the case, or I should say attempting to relitigate the case, than something that happens 16 years later. The Commission has to make a decision if, again, if there's a public denial. Does it want to dedicate its current resources to relitigating a past case? Does it think, for instance, that the evidence is still attainable, memories are still there? Are the attorneys who litigated the case, do they still even work at the Commission? As well as the fact is, what is a district court going to respond to a Commission attempt to reopen or relitigate an old case? And my point here is not that this won't occur, it's that we don't know anything about these particular cases. And this gets to the problem with the subjective chill nature of this case. It's one thing if the plaintiff who is bringing the case has a subjective chill issue. That's where cases like Laird and United Presbyterian say that there's no standing. But here it's even more complicated. It's even more complicated because we haven't been given any information about the unnamed defendants who are not the plaintiffs. I don't understand what you mean by subjective chill. If an individual is under a consent decree or has signed a contract, a settlement contract, there's nothing subjective about that if there's a clause in there that says you can't criticize the SEC. What's subjective about that? I mean, I think it's subjective because it's a refusal to speak based upon a guess or a view about what could occur in the future in terms of whether the Commission would actually seek its contractual remedies as well as whether a court would grant it. But that's talking about what the Commission is going to do, not what the individual's reaction to a clause restraining them from talking. I'm sorry, Your Honor, I didn't mean to cut you off. No, go ahead. No, I mean, and this gets to the question that is at the core of cases like Laird and United Presbyterian is, is there an immediate threat of concrete action? And this gets to the problem with the allegations in the complaint. There is no allegation of an immediate threat of concrete action with regard to these particular defendants that Cato is saying are refusing to speak to it. All you have in Cato, particularly in its reply brief, places an enormous amount of emphasis on a single allegation. It's at JA-12. It's paragraph 30. And all they say is upon information and belief, and let's just assume the court accepts an information and belief allegation of this sort, is that the Commission has demanded that other former defendants, former defendants with whom Cato has no relationship, that the Commission has issued retractions. Now, I'm not quite sure what issue retractions mean, but that is a far step from the Commission having taken any concrete immediate present action with regard to the particular unnamed defendants that Cato has talked about. It is a fundamental part of free speech law that if an individual was subjected to a law, in this case, a consent decree that restrains their speech, they don't have to violate it first before they can challenge it. And that's unlike other areas of the law. With respect to First Amendment free speech, that is a standard black letter rule that you don't have to violate it before you can challenge it. So why should Cato be under any kind of difference constraint? Because I think this has everything to do with the difference between a statute and contractual remedy. I absolutely accept your point, Judge Randolph, about a statute. And if this was simply a you cannot say X, I agree that in cases there's a presumption that if there is a violation of X, if you've said X, that the agency charged the authority to enforce is going to bring an enforcement action. You can assume that. But here in a contractual provision where the Commission may not exercise its rights and a court has to basically approve it to bring a case back, it's a different circumstance. And I do think this brings up both the prudential consideration. Why? On the specific question of likelihood of enforcement, why does it matter that the obligation arises by contract rather than by statute? I think it makes a huge difference in terms of whether the Commission, in terms of what Cato has alleged the Commission has done, whether the Commission will actually seek the remedy, particularly when we don't know anything. Again, the court is being given a broad programmatic challenge without any facts with regard to a particular consent judgment, that there are circumstances where the Commission may simply let the speech go and may not do anything. I think when a statute says you can't do X, the Commission does not have that liberty to sort of say, well, we're just not going to enforce the law. And I grant you prosecutorial discretion. I grant all that. But it is still different that there are circumstances where the Commission may simply decide it is not worth either its time or the court's time to attempt to re-litigate a very old case. But I do think the prudential considerations that Judge Wilkins raised, as well as the sort of comedy invasion of another court's jurisdiction issue, that does factor in here. And it factors in in the following way, which is if the Commission does decide, meaning if these unnamed defendants were to speak, and the Commission were to actually determine that it wants to seek its contractual remedies, one is the Commission, again, would have to bring a motion pursuant to the terms of the consent judgment. It would be at that time, the plaintiffs, the individuals who signed the consent judgment, excuse me, I don't mean to say plaintiffs, the unnamed defendants who signed the consent judgment would have an opportunity before that court to make any arguments they want, including the types of First Amendment arguments you'd have here. That would be in a more specific way. The issues would be more clearly presented. But also, it's not asking this court, which is what Cato is doing, is to basically invade the jurisdiction of every single court that has entered a consent judgment. And I do think it's important to talk about the fundamental mismatch between what Cato is asking for here and the injury it claims. So Cato, for instance, is asking for an injunction against all future no-deny provisions, but it's not claiming an injury related to future consent judgments or future no-deny provisions. Nor does it claim any injury from past consent judgments signed by other defendants who may not actually wish to deny. They may not wish to have their settlements changed. They like their settlements. They like to keep it in the rearview mirror. As to the prudential arguments you're making, that really what's going on here is we have a plaintiff asserting the rights of third parties. Yes. That may be a good argument, but it's a prudential standing argument. And it's pretty clear after June Medical that prudential standing arguments are forfeitable. And you've argued this issue solely in Article III terms. I disagree with that, Your Honor. On our motion to dismiss, we certainly raised prudential arguments. We talked about it not only in terms we're talking about now, in terms of the ability of the unnamed defendants to have a day in court, but also in terms— Not in the red brief. No, we did talk about prudential standing in the red brief as well. In particular, we talked about, in terms of on page 19 of our brief, we talked about the skepticism courts have in a prudential jurisdiction context about allowing plaintiffs to advance claims based on contracts to which they're not parties or intended beneficiaries. The prudential standing issue also comes into play as part of the sort of comedy analysis that comes more granted in terms of our rightness argument. I mean, I do take your point. Look, prudential standing has obviously changed in the past few years. Is prudential standing constitutional? No, it is not. In my view, I don't view— What I meant by that is that where does the Supreme Court get the authority to deny jurisdiction over a matter that Congress said is within the jurisdiction of the federal courts? Is that constitutional for the Supreme Court to do that? For the, I mean— That's what's driving these cases. The Indian Casino case that I mentioned is a perfect example of that. I mean, look, it's a great question. It's an interesting question. Ultimately, I think this court can decide this case on Article III grounds without dealing with that difficult question, which probably goes back to what the Supreme Court's authority is. Let me ask you a broader question here because we're arguing back and forth. And I said earlier that it's hard to separate the merits out from the question of standing. But is this case really analogous to something like Belle v. Hood, where the Supreme Court held that you don't throw a case out on jurisdictional grounds simply because it appears that the individual will not be able to recover? And Belle v. Hood was, what, 20 years before Bivens. You know, the claim was that you can get damages under the Fourth Amendment, and the court threw it out on jurisdictional grounds. Isn't that really what we have here? I mean, Cato has an injury. It claims redressability, and it claims causation. I mean, we— Sorry, Judge. Yeah, go ahead. No, I mean, we sharply disagree with all three of those. Cato doesn't have an injury here. Cato has a derivative injury that's based on basically the chill of third parties about whom we know nothing, without any allegations of where there would be a claim of specific present objective harm other than the chill, or any specific action that's threatened or even contemplated against them. Obviously, nothing can be threatened or contemplated against them. We don't even know who the people are. And that's Cato's litigation tactic that they chose, which is to bring a broad programmatic challenge without giving the court the ability to ferret out what's really going on in the sense of what are the consent terms, when were they— Well, if that's your problem, you can have jurisdictional discovery. I mean, that is one of several problems, that we don't know the identity of the people, which is required by cases like Friends of Earth and Summers. But even if that were to be provided, you still have the problem that there's absolutely no allegation in the complaint, which we take as it is, that the commission has contemplated or threatened any action. And that is what the Supreme Court requires in Laird. But if we're talking about the sort of fundamental sort of take-a-step-back issues, I mean, I think the Supreme Court has also been real wary of accepting programmatic-level challenges, where the injury is not direct to the plaintiff, which is what we have here, because Cato is not subject to a consent judgment, but instead is advocating the views of, in essence, someone else, without having done their work. I'm almost out of time. I did want to talk about Woodhull and Pitt News, but— Well, let's assume we disagree with you on the reasonable likelihood of enforcement as against the one speaker they have. I thought—so then you make a different argument, which is that the only restraint at issue runs against the third-party defendant who's not before us, and Cato is free to publish. So I was wondering about that. I mean, isn't a fair reading of the complaint that Cato is bound not to publish because the third party can't speak? They're not really clear about this, but it seems like a reasonable reading of the complaint is that the third parties are going to Cato and saying, here's information, you can know about it, you can get legal advice about whether this is a lawful restraint, but we are not authorizing you to publish it to the world. I mean, it's an interesting facet of the complaint, which is that Cato only— Sorry, just—your response to that is to say that Cato faces no exposure vis-a-vis the commission, which is clearly true, but they might face exposure vis-a-vis the third party if the third party has told Cato, we're giving you this information, but we're not authorizing you to publish it. I mean, if the argument that Cato's injury is that their contract with the author could somehow be disrupted, I mean, they entered into that contract, according to their own allegations, knowing full well about the no-deny provision. But if this is more asking a question sort of about the Overbay case and the idea of sort of the ability to receive information, I mean, Cato is fully obviously alleged that they were able to receive the information, and that distinguishes Cato from the newspaper or the magazine that was involved in Overbay, where the whole allegation— That's not how the Fourth Circuit articulated the injury, and that's not how the Baltimore Brew articulated the injury. It was the ability to— Why isn't that the right way of thinking about it? They have information, they want to publish it, and they can't because of the restraint you all have imposed on the third party who gave them the information. But if you think about it that, then again, it moves the injury from Cato's injury back to the derivative injury of the third person, of the third parties, and we're back to the whole line of Schill cases and Laird and United Presbyterian. It moves away from what the issue was in Overbay. I mean, I guess I'm just trying to figure out if you have a level of defense besides, number one, third party standing, and number two, unlikelihood of the SEC enforcing against the third party, or are those your two— No, no, no. I mean, I think there's issues with actual or imminence, but then those also bleed over into traceability and redressability. Traceability is because of the large number of events that have to occur, and part of redressability is, you know, let's just talk hypothetically, if the court were to grant the broad relief that's being sought here, in essence, line-iteming the consent judgments of the individual unnamed defendants, the commission may not want those settlements anymore. It may seek to vacate them, which leaves those unnamed defendants in the exact same position, which is that the commission has the option—not the obligation, but the option—to ask a court to undo what has come before, an option that a court may very well say, nope, sorry, you're out of luck, commission. We're not going to let you relitigate the case. I am well over my time, so. All right. Are there further questions from the panel? Waste, fraud, and abuse in the government, whether it's the courts, Congress, executive branch, and they say, we'd like to hear from, you know, law clerks, congressional aides, government officials about waste, fraud, and abuse, but there are all these rules and regulations that prevent them from speaking to us. And they could get fired or there could be, you know, there could be ramifications. So, you know, we want to be able to challenge each and every one of those regulations as, you know, because it's impeding our First Amendment rights to kind of be able to effectively advocate against waste, fraud, and abuse, etc. My problem is, is that if we accept standing for Cato here, don't we just open the floodgates for anyone who wants to publish speech of someone affected by a government regulation to be able to indirectly challenge each and every regulation like that? I think we'd have two problems bringing in that lawsuit, Your Honor. One, a factual problem. We'd have to be able to identify the particular speaker who has written a book and come to us and said, you can publish this book full of confidential information, which is going to be a difficult factual thing to find because at that point, the law clerk or other government employee has already breached his duty. And so I don't think we'd be able to find and plead that we had the actual speaker. And we'd have a merits problem where I think there's a very different First Amendment calculus between the government saying, in exchange for us giving you access to this confidential information, you have to promise not to disclose the confidential information and saying, in exchange for us letting you plead to count one, you have to promise never to question the accuracy of count two. I just think that the First Amendment calculus would be different. But the standing problem I see there would be a factual problem much more than it would be a legal problem. I can't imagine a plaintiff having the sort of concrete speakers that we have here. And if I could make just two quick points on rebuttal, I think this is not a subjective chill case. The subjective chill cases like Laird and American Library Association v. Barr all involve plaintiffs who it wasn't clear they were even going to engage in activity that would be illegal under the law. Here, we have people who have specific agreements that say they specifically may not say these specific things. And the only way to say them is to risk expensive litigation, which I think the Supreme Court and SBA list made clear we can't expect people to choose between engaging in protected speech and retaining attorneys for potentially extremely expensive litigation. And second, Your Honor, my friend complained several times that the record before us doesn't identify each speaker. And I just want to stress again that this is a remedy problem. We're up here on the pleadings. And of course, before a court enters a declaratory judgment, it will have a full record before it of who has contacted Cato and exactly what they're willing to say. And at that point, I think we can wrestle with any of these problems. And I'm happy to do that there. I don't think it's a 12-B ground for dismissal. Thank you. All right. Thank you. We have your argument, and we'll take the case under submission.
judges: Wilkins, Katsas, Randolph